Hillsborough County Probate Court
No. 87-032

*In re* Petition for Involuntary
Admission to N.H. Hospital
of David F. Demers

October 15, 1987

*David A. Horan*, assistant county attorney, Hillsborough County, by brief and orally, *pro se*, as petitioner.

*Stephen E. Merrill*, attorney general (*David S. Peck*, assistant attorney general, on the brief and orally), for Jack E. Melton, Superintendent of New Hampshire Hospital.

Souter, J.   In this appeal from a decree of the Probate Court for Hillsborough County (*Cloutier*, J.), the superintendent of New Hampshire Hospital challenges the court's authority to require prior judicial approval before the superintendent may take action under RSA 135-C:49 (Supp. 1986) to discharge a patient involuntarily committed to the hospital by the court under RSA 135-C:34–54 (Supp. 1986). We vacate the portion of the decree obligating the superintendent to obtain such approval, and remand.

This case grows out of a controversy between the petitioner for David Demers's involuntary commitment and the superintendent of New Hampshire Hospital, over the need to hospitalize Demers. The superintendent was not represented at any of the probate court's hearings, however, with the consequence that the record before us reveals only the clinical judgments in favor of commitment. Nor was the testimony at those hearings recorded and subsequently preserved by transcripts. Since it is therefore hazardous to speak in detail of Demers's circumstances, and unnecessary to do so in order to deal with the legal issue before us, we will say little about the facts preceding issuance of the probate court's decree that we have been asked to review.

In May 1986, while Demers was serving a sentence at the Hillsborough County House of Correction, he was the subject of a petition to the probate court, under former RSA 135-B:28, for his involuntary commitment to New Hampshire Hospital as an inpatient. After the appropriate examination and hearing, the court

committed Demers under former RSA 135-B:37 for a period not to exceed two years. *See* RSA 135-C:45 (Supp. 1986). Shortly thereafter, the superintendent of the hospital discharged him under the authority of former RSA 135-B:39; *see* RSA 135-C:49, I (Supp. 1986), and Demers was returned to the house of correction.

At the time, five appealed misdemeanor charges were pending against Demers, and the superior court ordered a pre-trial psychiatric examination under RSA 135:17. After receiving the psychiatric report, a Hillsborough County assistant attorney and Demers's defense counsel stipulated that it would be appropriate to enter *nolle prosequi* to each of the misdemeanor charges and to institute a new civil proceeding for a second involuntary commitment to New Hampshire Hospital. David Horan, acting as Hillsborough County assistant attorney, filed such a petition, which the probate court heard in November 1986. Again, the court committed Demers under RSA 135-B:37 for a period not to exceed two years, but its order of November 19, 1986, included the following additional terms:

> "The Court further orders that Jack Melton, Superintendent of said New Hampshire Hospital, not release said David Demers from the New Hampshire Hospital under RSA 135-B:28, without first preparing a discharge plan, a copy of which shall be forwarded to the Probate Court for Hillsborough County for a hearing thereon and its approval thereof, which discharge plan would include:
> 1. How David Demers would obtain medicines and who would administer such medicines to him.
> 2. Where he would reside, i.e., shelter.
> 3. How he would eat and what he would wear.
> 4. How his social security money would be dispensed to him.
> 5. Who would be responsible for seeing that David Demers' needs for food, clothing and shelter be provided to him.
>
> The above conditions are imposed without reservation and if this order is not followed, Jack Melton is ordered to appear before this Court and show cause why he should not be held in contempt."

Demers was then transported to New Hampshire Hospital where, in the absence of any contrary indication in the record, we assume he remains.

In December 1986, the attorney general, representing the superintendent of the hospital, filed a motion to reconsider the commitment order and to strike the provisions quoted above. After the probate court denied the motion in January 1987, the superintendent brought this appeal and, alternatively, filed a petition for writ of prohibition under Supreme Court Rule 11, seeking to enjoin enforcement of the disputed portion of the order. For procedural convenience, we have chosen to hear the matter on direct appeal by recognizing that the superintendent became a party by intervening in the commitment proceeding in response to the order issued against him.

The superintendent raises three issues. He contests the probate court's assertion of personal jurisdiction over him, the court's purported exercise of statutory authority to impose the disputed conditions, and the court's imposition of guardianship responsibilities without following the procedure required by RSA chapter 464-A. The petitioner responds that the court did have personal jurisdiction over the superintendent, and he further asserts that Demers has a right to treatment, citing former RSA 135-B:43, which the probate court has jurisdiction to enforce.

We view the case more narrowly, however. While the petitioner's standing to assert a patient's right to treatment is subject to argument at best, the petitioner made no such assertion in the probate court and may not do so for the first time here. *See Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). Among the remaining issues, raised by the superintendent, the court's statutory authority to impose the disputed conditions presents an obviously dispositive question, and we therefore address that alone.

Our answer to this question turns on a plain reading of the relevant portion of RSA 135-C:49, I (Supp. 1986):

> "When any person has been involuntarily admitted to a receiving facility pursuant to RSA 135-C:34–54 or conditionally discharged pursuant to paragraph II of this section, the administrator of the receiving facility most recently providing care to the person may grant an absolute discharge to the person with the consent of the director or his designee who has examined the person to be discharged within 3 days of the absolute discharge order, provided that the person is no longer in need of care. The administrator shall, in writing, immediately notify the court entering the original order of commitment that the person has been given an absolute dis-

> charge from the receiving facility. Upon receipt of the notice, the court shall make the notice part of the person's file and shall enter the discharge and the date of discharge upon the docket."

It is difficult to imagine how the statute could provide any more plainly that the administrator (in the case of New Hampshire Hospital, the superintendent, *see* RSA 135-C:2, II (Supp. 1986); RSA 135:3 (Supp. 1986)) may discharge an involuntarily committed civil patient without leave of the committing court. The separate provisions for the respective functions of administrator and committing court in such a case indicate that the legislature exercised a conscious judgment about what was appropriate to each. From the provision directing the court to enter the administrator's notice of discharge on the docket, it is clear that the legislature intended the court to have no role in such an administrative discharge, except to make a record of it. Thus we have previously held that former "RSA 135-B:39 (Supp. 1983) provides that those civilly committed may be discharged from treatment by the [superintendent] of the hospital with the consent of a psychiatrist," *State v. Ballou*, 125 N.H. 304, 309, 481 A.2d 260, 262 (1984), in contrast to RSA 135:28-a, which vests the superior court with jurisdiction over the discharge of those patients who are committed to New Hampshire Hospital by criminal process. *Id.*

In light of this grant of statutory jurisdiction to the superintendent under RSA 135-C:49, I (Supp. 1986), unfettered by any obligation to obtain judicial approval, the probate court's assertion of power to limit the superintendent's discretion could only be justified by equally clear authority from some other source. None exists in the constitution or at common law, since the probate court's jurisdiction over persons civilly committed is entirely statutory. *See* RSA ch. 135-B. Only the legislature, therefore, could provide the probate court with power to impose the conditions in question.

The petitioner tries to discern such a legislative provision in a portion of the text of what is now RSA 135-C:20, II (Supp. 1986), which grants a probate court the option to retain jurisdiction in certain involuntary commitment cases:

> "For a client who is subject to an order for involuntary admission under this chapter, jurisdiction for a hearing held pursuant to this chapter is vested in the probate court for the county where the receiving facility that has been treating the client most recently is located, unless

> the court making the initial involuntary admission order has specifically retained jurisdiction over such person."

This provision for "retained" or continuing jurisdiction is far narrower, however, than the petitioner claims. The jurisdiction so conferred is restricted to "proceedings under RSA 135-C:34–54," a limitation that the petitioner's brief fails to quote, either from the presently effective statute, or from the similar text of the old RSA 135-B:3 (Supp. 1986). The phrase "proceedings under RSA 135-C:34–54" has natural referents in two separate statutory provisions for probate court subject matter jurisdiction: RSA 135-C:34 (Supp. 1986) *et seq.*, governing proceedings brought in a probate court for non-emergency involuntary admission, and RSA 135-C:53 (Supp. 1986), authorizing proceedings for release on petition of the patient. RSA 135-C:20, II (Supp. 1986) thus empowers a probate court to retain personal jurisdiction to hold proceedings for commitment and for release at the request of a committed patient, but in no other cases.

Hence, we conclude that no statutory basis exists for any exercise of power by a probate court limiting the superintendent's authority to discharge a patient under RSA 135-C:49, I (Supp. 1986). The disputed portion of the order is therefore vacated, and the case is remanded for modification of the record accordingly.

We are of course aware that our decision leaves open the possibility of disagreement between a committing judge and the hospital superintendent over the need for a given patient's involuntary hospitalization, without there being any definitive mechanism for resolving their dispute. This possibility is, however, the inescapable result of the existing legislation, and if the statutory scheme deserves reconsideration, the legislature is the forum in which that must take place.

*Vacated in part and remanded.*

BATCHELDER, J., did not sit; the others concurred.